UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHISANDRA LAMBERT,                          Case No. 13-14417

        Plaintiff,                          Avern Cohn
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On October 21, 2013, plaintiff Chisandra Lambert filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for disability and disability insurance benefits.  (Dkt. 2).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 10, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability and disability insurance

benefits on January 25, 2011, alleging disability beginning August 23, 2010.

(Dkt. 7-5, Pg ID 160-61).  Plaintiff's claim was initially disapproved by the

Commissioner on May 19, 2011.  (Dkt. 7-3, Pg ID 105).  Plaintiff requested a

hearing and on March 6, 2012, plaintiff appeared with his attorney before

Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the case de

novo.  (Dkt. 7-2, Pg ID 63-95).  In a decision dated May 23, 2012, the ALJ found

that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 46-58).  Plaintiff requested a

review of this decision, and the ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[1] the Appeals Council,

on August 20, 2013, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 30-

35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1961 and was 50 years old at the time of the administrative hearing, and 49 years of age on the alleged disability onset date. (Dkt. 7-2, Pg ID 51).  Plaintiff had past relevant work as a front counter clerk and data entry clerk.  (*Id.*).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 7-2, Pg ID 51-52).[2]  At step two, the ALJ found that plaintiff's status post total knee arthroplasty of the left knee, chronic low back pain, and right torn rotator cuff were "severe" within the meaning of the second sequential step, but that plaintiff's claimed degenerative disc disease of the cervical and lumbar spines and bilateral carpal tunnel syndrome are not medically determinable impairments.  (Dkt. 7-2, Pg ID 52).  At step three, the ALJ found no evidence that plaintiff's impairments or combination of impairments met or equaled one of the listings in the regulations.  (*Id.*).  The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b)
> except the claimant is able to stand/walk for about 2

---

[2] The ALJ noted that plaintiff returned to work on March 1, 2011 and worked through July 24, 2011, but found that "[d]ue to the short duration of work at SGA levels, less than 6 months, and because the claimant stopped working due to the severity of her impairments," "the work in 2011 was an unsuccessful work attempt."  (Dkt. 7-2, Pg ID 51-52).

hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. The claimant is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. The claimant requires jobs that would allow the individual to sit or stand alternatively, provided the individual will not be off-task more than 10% of the work period. The claimant can never operate foot controls. The claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant can occasionally perform overhead reaching with the right upper extremity. The claimant can frequently perform handling and fingering bilaterally. The claimant is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged ambulation and the contralateral upper extremity can be used to lift and carry up to the exertional limits. The claimant must avoid all exposure to excessive vibration, use of moving machinery, and exposure to unprotected heights. The claimant requires work that is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes due to the residual effects of pain and side-effects of medications.

(Dkt. 7-2, Pg ID 52-56).

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work because the demands of that past work exceed the residual functional capacity. (Dkt. 7-2, Pg ID 57). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7-2, Pg ID 57-58). Based on the foregoing, the ALJ

concluded that plaintiff had not been under a disability from August 23, 2010

through the date of the decision.  (Dkt. 7-2, Pg ID 58).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred as a matter of law in failing to properly

evaluate the medical records and opinion evidence, and thereby formed an

inaccurate hypothetical that did not accurately portray plaintiff's impairments.

Plaintiff contends that although the record evidence demonstrates that plaintiff has

a history of a status post total knee arthroplasty of the left knee, chronic low back

pain, and right torn rotator cuff, the ALJ nevertheless found plaintiff capable of

making a successful adjustment to other work that exists in significant numbers in

the national economy.  (Tr. 28).  Plaintiff asserts that the ALJ's finding that the

plaintiff would be able to perform certain jobs such as inspector, assembler,

machine operator, information clerk, and surveillance system monitor is

erroneous.

Plaintiff asserts that she testified at the hearing that she was not able to

stand for longer than 10 minutes due to the low back pain and knee pain, and that

she also is limited in her ability to sit for longer than 10-15 minutes due to back

pain.  (Tr. 48).  Plaintiff also testified that she is limited in her ability to walk

longer than 10 minutes.  (Tr. 48).  Plaintiff claimed that the pain associated with

her knee and low back is present and severe with even the most minute of tasks,

and that she is required to take medications, which she asserts make her tired throughout the day. (Tr. 46). Although plaintiff testified that she does not need to take naps, she stated that she is required to stop and rest frequently–even at home. (Tr. 50).

Plaintiff further testified that, aside from her low back and her knee complaints, she also suffers from right shoulder pain, and she is going to physical therapy. (Tr. 38). Plaintiff contends that her shoulder pain affects her ability to lift greater than 15-20 pounds. (Tr. 48). Plaintiff asserts that it is significant that she is right hand dominant (Tr. 42), and that her shoulder pain severely impacts her ability to not only perform simple, routine, tasks, but also to function during a continuous eight hour work day. Plaintiff argues that the ALJ's finding that she is capable of performing the positions of inspector, assembler, machine operator, information clerk, and surveillance system monitor, which she asserts would continuously require the use her right upper extremity and the need to stand, sit, and walk, is erroneous. (Tr. 29). Plaintiff contends that requiring her to perform these positions subjects her to further injury and is inhumane. According to plaintiff, her limitations effectively preclude her from performing any work, including the listed representative occupations, and the ALJ's reasoning to support his credibility finding is not substantiated.

Plaintiff further argues that the ALJ erred in determining that the opinion of

Dr. Buchman–the physician who evaluated plaintiff on behalf of the State agency on May 6, 2011–is assigned little weight because Dr. Buchman implemented more restrictions than what the ALJ reasoned was appropriate.  (Tr. 27).  Plaintiff questions who is in the better position to evaluate whether plaintiff needs restrictions: the ALJ who asks the claimant how she feels, or the doctor who actually performs a physical examination?  Plaintiff contends that if the State agency asks Dr. Buchman to evaluate plaintiff, then it is flawed to assign little weight to the doctor's opinions simply due to the fact that the ALJ, clearly, did not like that opinion.  (Tr. 27).

Plaintiff further argues that the hypothetical question asked of the vocational expert is flawed because plaintiff testified that she is limited in her ability to sit, stand, walk, and use her right upper extremity.  (Tr. 38, 40, 48). Plaintiff questions how can a person who cannot use their arm and is limited in sitting, standing, and walking possibly be expected to perform any of the positions identified by the vocational expert.  Plaintiff argues that she could not engage in any type of job that requires use of her right arm on a continuous basis, and thus the hypothetical questions posed to the vocational expert are improper.  Plaintiff therefore requests that the existing medical records be re-evaluated and more weight be assigned to Dr. Buchman's evaluation.  Plaintiff requests that, based on the above arguments and relevant case law, this Court reverse the decision

denying benefits and remand this case with an award of benefits, or, in the alternative, remand this matter for further proceedings consistent with the above arguments.

### C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff was not disabled and could perform a reduced range of light work.  The Commissioner contends that the ALJ reasonably found that despite plaintiff's severe impairments of status post total knee arthroplasty of the left knee, chronic low back pain, and right torn rotator cuff, plaintiff was not disabled because she had the residual functional capacity (RFC) to perform a reduced range of light work (Tr. 23-24), and that based on the ALJ's RFC, plaintiff's age, education, and work experience, as well as the vocational expert's testimony, plaintiff was not disabled because jobs existed in significant numbers that she could perform.  (Tr. 28-29).  According to the Commissioner, plaintiff attacks the ALJ's decision on the grounds that the ALJ: (1) did not accommodate pain in her knees, back, and rotator cuff; and (2) improperly gave little weight to a portion of the examining physician's opinion.  The Commissioner asserts that plaintiff is mistaken because, to support her arguments, plaintiff focused exclusively on her hearing testimony about her symptoms and ignored virtually all of the objective medical evidence.  The Commissioner argues that the record as a whole, however,

shows that substantial evidence amply supports the ALJ's determination that plaintiff's physical impairments, although severe, were not disabling. (Tr. 69-73).

Turning first to plaintiff's knee, the Commissioner argues that the ALJ reasonably concluded that plaintiff's knee recovered well after her August 2010 surgery, that her range of motion restored after physical therapy, and that she could perform light work with a cane and a sit-stand option, among other accommodations. (Tr. 23-27). The Commissioner asserts that an ALJ may discount a claimant's complaints where, as here, objective medical evidence did not suggest she was disabled. According to the Commissioner, in his decision, the ALJ considered evidence that plaintiff underwent a total left knee arthroplasty in August 2010 and that she still had difficulty with flexion and extension one month later. (Tr. 25, 191-93, 209). Plaintiff's treating orthopedist, Dr. Norman Walter, told her that she needed to work harder in physical therapy to recover. (Tr. 25, 209). Notably, Dr. Walter reluctantly extended plaintiff's sick leave, noting that he did not see any complications in plaintiff's knee and, instead, felt that she needed to be more motivated to return to work. (Tr. 25, 209). By October 2010, plaintiff was doing reasonably well and she stated that she did not have much pain, but still had some decreased range of motion. (Tr. 25, 207). Dr. Walter ordered more physical therapy and told plaintiff to return to work around a month and a half later. (Tr. 25, 207). In addition, x-rays from around October

2010 showed that plaintiff had excellent tracking of the patella and good technical position. (Tr. 25, 207).

By January 2011, plaintiff's knee had a large keloid (or scar tissue) in the area where her knee surgery was performed, which reduced her flexion and extension. (Tr. 25, 203-04). Dr. Walter told plaintiff to treat symptoms from her keloid by wearing a knee brace and undergoing physical therapy, and he extended plaintiff's sick leave for three months. (Tr. 25, 203-04). Notably, Dr. Walter observed that plaintiff was "angling for some sort of disability retirement." (Tr. 25, 201). In January 2011, Dr. Walter completed a questionnaire for plaintiff's short-term disability insurance provider where he opined that plaintiff could return to work in March 2011, but that she had to wear hand braces and use a cane for six months and that, thereafter, plaintiff could return to work without those restrictions as of September 1, 2011. (Tr. 26, 251-52). The Commissioner contends that the ALJ assigned great weight to Dr. Walter's opinion because it was consistent with his treatment notes which showed that plaintiff's condition gradually improved after her knee surgery. (Tr. 26). The Commissioner argues that the regulations provide that an ALJ may rely on a treating physician's opinion where, as here, it is supported by the objective medical evidence and the physician's own treatment records, based on a lengthy treatment relationship, and related to an area within the physician's expertise, here, an orthopedist. 20 C.F.R.

§ 404.1527(c)(2).  The Commissioner concludes that, as such, the ALJ

incorporated Dr. Walter's required use of a cane into his RFC assessment and

reasonably relied on Dr. Walter's assertion that plaintiff could return to work,

despite her knee problems.  (Tr. 23, 26).

The Commissioner argues that plaintiff's treatment notes with Dr. Walter

during the brief stint that plaintiff tried to go back to work further evidence that

plaintiff's knee impairments were not disabling.  Two months after plaintiff

returned to work, she complained to Dr. Walter about the keloid but noted that she

was doing better and that she tolerated work "fairly well" with a sit-stand option.

(Tr. 26, 243-44).  Despite that admission, however, plaintiff told Dr. Walter that

she was "pursuing disability and wanted to retire."  (Tr. 26, 243-44).  The

Commissioner contends that the ALJ reasonably found that Dr. Walter's repeated

references to plaintiff's lack of a desire to work detracted from her credibility.

According to the Commissioner, the Sixth Circuit has held that a court "may not

disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith

v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Moreover, on examination, Dr.

Walter concluded that plaintiff's difficulty obtaining range of motion in her knee

had resolved.  (Tr. 26, 244).  In fact, the Commissioner continues, plaintiff had a

full range of motion in her left knee with full flexion to well over 100 degrees of

flexion.  (Tr. 26, 244).  And, her left knee was stable to palpation both medially

11

and laterally with no effusion, although her keloid was still tender.  (Tr. 26, 244).

Moreover, in June 2011, plaintiff told her primary care physician, Dr. Elmahdi

Saeed, that she had pain in her left knee but that it did not limit her daily activities

and that the pain was relieved with over-the-counter medication.  (Tr. 26, 224-26).

The Commissioner argues that, in light of the foregoing extensive medical

evidence, the ALJ reasonably concluded that plaintiff's knee pain was not

disabling.

　　　　The Commissioner further argues that the ALJ also reasonably

accommodated plaintiff's alleged back pain by limiting her to light work with a

sit-stand option.  According to the Commissioner, plaintiff also cited no evidence

showing that the ALJ's RFC failed to accommodate her symptoms, especially in

light of her own statements to her doctor that she tolerated work "fairly well" with

a sit-stand option.  (Tr. 26, 243).  In fact, the ALJ noted that although plaintiff

complained about low back pain, no doctor ever diagnosed her with degenerative

disc disease and the record did not include any diagnostic testing to support such

diagnoses.  (Tr. 23).  Moreover, consulting examining physician Dr. Clifford

Buchman noted that despite a history of lower back pain, there were no signs of

radiculopathy.  (Tr. 27, 218).

　　　　The Commissioner argues that the ALJ further reasonably found that

plaintiff's rotator cuff symptoms did not preclude her from performing a range of

light work.  According to the Commissioner, the ALJ considered plaintiff's complaints about her symptoms to Dr. Walter and noted that she underwent physical therapy, which improved her range of motion.  (Tr. 26, 243-46, 253).  By June 2011, Dr. Saeed observed that plaintiff had full range of motion in her shoulders and upper extremities.  (Tr. 26, 224-26).  The Commissioner asserts that, despite that evidence, the ALJ still accommodated plaintiff's symptoms by limiting her to work that involved only occasional overhead reaching with the right upper extremity and only frequent bilateral handling and fingering.  (Tr. 23). The Commissioner contends that plaintiff appears to complain that the ALJ did not accommodate her complaint that her shoulder affected her ability to lift greater than 15 to 20 pounds.  The Commissioner argues, however, that is not what plaintiff testified to at the hearing.  On the contrary, plaintiff testified that she could lift 15 to 20 pounds, which the ALJ's accommodated in his RFC assessment of light work.  (Tr. 24, 48). The Commissioner argues that plaintiff cited nothing else to support her claim that the ALJ did not accommodate her rotator cuff injury and, thus, her complaint should be rejected.

The Commissioner contends that, in her brief, plaintiff does not acknowledge the ALJ's analysis of the medical evidence from her treating sources. Instead, she complains that the ALJ should have credited Dr. Buchman's opinion that plaintiff could not climb repetitive stairs, kneel, stoop, or squat, and that she

13

needed to elevate her leg during the day.  The Commissioner argues that plaintiff's assertion lacks merit, and asserts, as an initial matter, that nothing in the medical record, including Dr. Buchman's examination, suggested that plaintiff needed to elevate her leg.  (Tr. 27, 216-23).  Further, the ALJ reasonably concluded that Dr. Buchman's restrictions as to plaintiff's total inability to climb stairs, kneel, stoop, or squat was not supported by the medical record.  (Tr. 24).  The Commissioner asserts that plaintiff's own treating orthopedist, Dr. Walter, did not impose any restrictions on plaintiff's ability to climb stairs, kneel, squat or stoop, and instead, restricted plaintiff to work that allowed her to ambulate with a cane.  (Tr. 251).  And, while plaintiff implies that the ALJ rejected Dr. Buchanan's opinion wholesale, she overlooked that the ALJ actually credited most of Dr. Buchman's opinion in his RFC assessment, including Dr. Buchman's conclusion that plaintiff needed to change positions, that she could sit for most of the day, and that she could walk for approximately two hours in an eight-hour work day.  (Tr. 23, 27, 218).  The Commissioner argues that plaintiff also ignores the fact that while the ALJ rejected Dr. Buchman's opinion that plaintiff cannot do any stair climbing, kneeling, squatting, or stooping, he nevertheless found that plaintiff could perform those activities on only an occasional basis.  (Tr. 23).  The Commissioner contends that plaintiff has not shown how the ALJ's determination was not supported by substantial evidence, and concludes that although plaintiff may disagree with the

ALJ's conclusions, she has not shown how the ALJ's decision lacks merit or was otherwise outside the ALJ's permissible "zone of choice" to make findings without "interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). The Commissioner asserts, therefore, that substantial evidence supports the ALJ's conclusion that plaintiff's physical impairments were not disabling, and notes that, "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Her v. Comm'r of Soc. Sec.*, 203 F.3d at 388, 389-90 (6th Cir. 1999). Indeed, the Commissioner argues, it is not sufficient for plaintiff to merely rehash the record and argue that some evidence contradicts the ALJ's decision that she was not disabled, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (Commissioner's decision will be upheld even if substantial evidence "contradicts" the ALJ's conclusion), and "[t]he burden lies with the claimant to prove that she is disabled." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). The Commissioner argues that the conclusory documentation plaintiff submitted, however, falls far short of meeting that burden, and therefore the ALJ's well-supported and thorough decision that plaintiff was not disabled should be affirmed.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

16

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

18

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

Plaintiff argues that the ALJ erred in determining plaintiff's RFC because

21

that RFC did not include plaintiff's testimony as to her limitations.  Plaintiff

asserts that she testified at the hearing that, because of her back, knee and shoulder

impairments, she cannot stand for longer than 10 minutes, cannot sit for more than

10 to 15 minutes, cannot walk for longer than 10 minutes, is required to rest

frequently, and cannot lift more than15 to 20 pounds, and that these limitations

render her disabled.  (Dkt. 10, citing Tr. 38, 40, 42, 46, 48, 50).  Other than a

reference to the ALJ's analysis of the consulting examining physician's opinion,

which is discussed more fully below, plaintiff completely ignored the objective

medical evidence.  (*Id.*).  However, plaintiff's claim that the ALJ's RFC

determination is in error because that determination does not include plaintiff's

subjective testimony is unavailing, as "an ALJ is not required to accept a

claimant's subjective complaints and may properly consider the credibility of a

claimant when making a determination of disability," and "can present a

hypothetical to the [vocational expert] on the basis of his own assessment if he

reasonably deems the claimant's testimony to be inaccurate."  *Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  The residual functional capacity

circumscribes "the claimant's residual abilities or what a claimant can do, not what

maladies a claimant suffers from-though the maladies will certainly inform the

ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*,

276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may

not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, while the medical evidence indicates that plaintiff does have severe impairments, as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of her limitations.

In determining plaintiff's RFC, the ALJ thoroughly reviewed the record evidence, including plaintiff's medical records, her testimony, and the opinion evidence of plaintiff's treating physicians and the consulting physician. (Tr. 23-27). The ALJ noted that plaintiff underwent a left total knee arthroplasty for correction of left knee degenerative arthritis on August 24, 2010. (Tr. 25, citing Tr. 187-93). Dr. Walter, plaintiff's orthopedic surgeon, examined plaintiff numerous times in the months following her surgery, and noted that plaintiff was doing reasonably well in terms of pain control, still had some decreased range of motion, and that she participated in the prescribed physical therapy. (Tr. 25-26, citing Tr. 200-14). X-rays of plaintiff's left knee revealed excellent tracking of the patella and good technical position. (*Id.*). Dr. Walters reluctantly extended

plaintiff's sick leave several times, eventually to March 1, 2011, noting in January 2011 that plaintiff was "angling for some sort of a disability retirement." (Tr. 25-26, citing Tr. 201-02). Dr. Walters restricted plaintiff to wearing hand braces and the use of a cane at work for six months, and indicated that plaintiff would be released to work without these restrictions by September 1, 2011. (Tr. 26, citing Tr. 251-52).

Plaintiff reported to Dr. Walters in May 2011 that her left knee was doing better, that she walked with a cane at work, and that she was tolerating work with a sit/stand option "fairly well" but was still pursing disability. (Tr. 26, citing Tr. 243-44). Physical examination revealed full range of motion of the left knee with full extension to well over 100 degrees of flexion, and the knee was stable to palpation both medially and laterally with no effusion. (*Id.*) The ALJ also noted that plaintiff displayed some pain on abduction of her right shoulder consistent with impingement syndrome and she was diagnosed with impingement syndrome of the right shoulder and possible rotator cuff tear, and plaintiff was referred for physical therapy. (*Id.*). In addition, the ALJ noted that in June 2011, plaintiff complained to Dr. Saeed, her primary care physician, of pain due to her left knee keloid (scar tissue), but reported that the pain did not limit her daily activities and was relieved by over-the-counter and prescription medications. (Tr. 26, citing Tr. 224-26). Plaintiff also complained of moderate knee pain that restricts weight

bearing activity and moderately limits activities, but denied stiffness or muscle weakness. (*Id.*) Physical examination revealed full range of motion of the bilateral shoulders and upper extremities, normal gait, and minor decreased flexion and extension in the left knee. (*Id.*)

The ALJ assigned great weight to Dr. Walter's January 18, 2011 opinion, finding:

> this opinion is consistent with the physician's treatment notes and review of the claimant's physical capabilities. Dr. Walter noted that the claimant's improvement following left knee replacement had been slow, yet she had improved somewhat and he anticipated that she would be free of all work restrictions within one year of her surgery. Dr. Walter also noted that the claimant had some issues with motivation to return to work. The undersigned has incorporated restrictions on using the bilateral hands as well as a requirement for use of a cane into the aforementioned residual functional capacity assessment.

(Tr. 26). The ALJ further noted that no doctor ever diagnosed plaintiff with degenerative disc disease and the record did not include any diagnostic testing to support such diagnoses. (Tr. 23). Plaintiff does not dispute this finding. Indeed, Dr. Buchman noted that despite a history of lower back pain, plaintiff did not display any signs of radiculopathy. (Tr. 218). Moreover, as explained above, a mere diagnosis with an impairment does not necessarily establish that the impairment is disabling. *See Yang*, 2004 WL 1765480, at *5 ("A claimant's

severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."). In any event, as the Commissioner points out, the ALJ reasonably accommodated plaintiff's alleged back pain by limiting her to light work with a sit-stand option. And, to accommodate plaintiff's complaints of shoulder pain, the ALJ reasonably limited plaintiff to work that involved only occasional overhead reaching with the right upper extremity and only frequent handling and fingering, and lifting less than 20 pounds, consistent with plaintiff's testimony that she could lift 15 to 20 pounds. (Tr. 24, 48).

As stated above, plaintiff does not address the ALJ's analysis of the medical evidence from her treating sources. Instead, plaintiff argues that the ALJ erred in evaluating Dr. Buchman's consulting examination of plaintiff, asserting "[i]f the State agency is to ask for Dr. Buchman to evaluate the claimant, then it would be flawed to assign little weight due to the fact that the ALJ, clearly, did not like what was issued." (Dkt. 10, at p. 11). The ALJ thoroughly discussed the record evidence regarding Dr. Buchman's examination of plaintiff, and the doctor's conclusions and opinion that plaintiff could use her hands for fine or gross manipulation, could sit for most of the day and stand and walk for a total of approximately two hours with a need to change positions and a need to elevate her right leg, and that plaintiff was unable to do repetitive stairs, kneel, stoop, or

26

squat.  (Dkt. 27, citing Tr. 215-23).  The ALJ assigned Dr. Buchman's opinion

"little weight," finding "it is more restrictive than the abilities to which [plaintiff]

testified."  (Tr. 27).  The ALJ further noted:

> While portions of Dr. Buchman's opinion have been
> adopted and included in the aforementioned residual
> functional capacity assessment, the undersigned finds
> that restrictions regarding an inability to do repetitive
> stairs, kneel, stoop, or squat are not supported by the
> medical evidence of record.  The medical evidence of
> record also does not support any need for the claimant to
> elevate her right leg during the workday.

(Tr. 27).

Plaintiff has not offered any record evidence, other than her hearing

testimony, that demonstrate she is more restricted than found by the ALJ.  As

explained above, Dr. Walter, plaintiff's orthopedic surgeon, did not impose any

restrictions on plaintiff's ability to climb stairs, kneel, squat or stoops, but instead

restricted plaintiff to work that allowed her to ambulate with a cane.  (Tr. 251).

The ALJ adopted that restriction, and further found that plaintiff could stair climb

ramps or stairs, kneel, squat and stoop only on an occasional basis, and could

never climb ladders, ropes or scaffolds or operate foot controls.  The ALJ also

found nothing in the record, including nothing in Dr. Buchman's examination, to

support a need for plaintiff to elevate her right leg during the workday, and

plaintiff has not offered any evidence to the contrary.  And, contrary to the

plaintiff's implication that the ALJ rejected Dr. Buchman's opinion entirely, the ALJ actually credited most of that opinion in his RFC assessment, including Dr. Buchman's opinion that plaintiff needed to change positions, that she could sit most of the day, she could walk approximately two hours in an eight-hour workday, and she could use her hands for fine or gross manipulation.  (Tr. 23).

"It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)).  "A consultative examination, performed on a one-time basis is not substantial evidence in comparison to competent evidence from a treating physician."  *Taylor v. Comm'r of Soc. Sec.*, 1996 WL 400175, at *9 (6th Cir. July 16, 1996) (citing *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984)).  Thus, "the Commissioner [is] not bound by the consulting physician's opinion."  *Taylor*, 1996 WL 400175, at *9; *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (unlike treating sources, an opinion from a one-time examiner does not receive special deference or weight); *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ–not a physician–ultimately determines a claimant's RFC.").

The undersigned thus concludes that the ALJ properly explained his reasons

28

for discounting Dr. Buchman's opinion, and plaintiff has not shown how the ALJ erred by affording more weight to the opinion of plaintiff's treating orthopedic surgeon over that of a consulting physician, or that the ALJ's decision is otherwise outside the permissible "zone of choice" allowed the ALJ.   *See, e.g., Williams v. Astrue*, 317 Fed. Appx. 212 (3d Cir. 2009) (affirming the ALJ's decision not to credit the examining consultant's findings where they were in conflict with non-examining consultant's findings, objective testing such as X-rays and MRIs, a specialist's report recommending only ibuprofen, and the examining consultant's own report).  The ALJ thoroughly discussed his reasons for accepting certain opinions and rejecting others, and the undersigned cannot say that he committed any error in doing so.  *See Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 472, 476 (6th Cir. 2008) ("Given the number of physicians that examined Gaskin and the variation of their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one physician.") (citing *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) (stating that an ALJ confronted with opposing medical opinions did not err in rejecting some of the opinions and accepting others where there was ample support in the record for the opinions he accepted)).  Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable

29

minds could disagree on whether the individual was disabled or substantial

evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611,

614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591,

595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's

decision, this Court will defer to that finding even if there is substantial evidence

in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 15, 2015                     s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 15, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov